

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ISAAC MARTINEZ,

    Plaintiff,

v.      No. 02 C 4937

ABBOTT LABORATORIES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Isaac Martinez was employed by defendant Abbott Laboratories ("Abbott") from 1980 until his termination on May 1, 1995. Mr. Martinez is of Filipino national origin. During the time relevant to his claims, Mr. Martinez worked as a senior solutions operator for Abbott. Mr. Martinez claims he was terminated because of his national origin in violation of Title VII, 42 U.S.C. § 2000e et seq. (Count I). Mr. Martinez also claims that Abbott unlawfully destroyed a work order related to his termination, either negligently (Count II) or willfully and wantonly (Count III). Mr. Martinez claims that Abbott had a duty to maintain that work order pursuant to 29 C.F.R. § 1602.14, which requires maintenance of documents relating to a Title VII claim. Abbott moves for summary judgment on all three counts. I grant that motion.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In Count I, Mr. Martinez claims that he was terminated because of his national origin in violation of Title VII, 42 U.S.C. § 2000e et seq. ("Title VII"). Construing the facts in the light most favorable to Mr. Martinez, the events surrounding his termination were as follows:

Mr. Martinez worked the third shift at Abbott. In April 1995, Timothy Fischer, the third shift supervisor, requested Abbott's gate access records because he had been having trouble locating Mr. Martinez during his shift. Abbott employees are issued a identification card that doubles as an access card, which employees use when they enter or exit Abbott's premises. The gate access records would indicate when a particular card had been used at the entrance or exit.

On April 27, 1995, Mr. Fischer went looking for Mr. Martinez shortly after 3 a.m., and could not find him in the mixing area.

Mr. Martinez claims that, while Mr. Fischer was looking for him, he was in a nearby "cold room" where certain ingredients were stored. Mr. Fischer found Mr. Martinez's current work order in the mixing area. Mr. Fischer saw that steps that had not yet been completed were noted as completed, with times later in the morning and Mr. Martinez's signature. Mr. Fischer made a copy of the two pages of the work order that showed the alleged falsification. Mr. Martinez claims that he did no such falsification, and that the two-page copy is not an accurate representation of the work order from April 27.

Later that morning, Mr. Fischer reported his concerns regarding Mr. Martinez to Karl Puterbaugh, a fellow supervisor with responsibility for all three shifts. Mr. Fischer and Mr. Puterbaugh then met with William Gately, the manufacturing manager to whom both men reported. Mr. Fischer provided Mr. Gately with the two-page copy of the April 27 work order and the gate access records.[1] Mr. Gately never saw or considered the original April 27 work order. Mr. Gately, with Mr. Fischer and Mr. Puterbaugh, examined the gate access records, which indicated that Mr. Martinez was using his access card to leave Abbott's premises during his work shift and not using the card to re-enter the premises for extended periods of time.

---

[1] Mr. Fischer had obtained gate access records both for April 27, 1995, and for some unspecified earlier time period.

3

On April 28, Mr. Gately, Mr. Fischer, and Mr. Puterbaugh met with Mr. Martinez to discuss the potential falsification of a work order and his absences. Mr. Gately summarized their concerns, and presented Mr. Martinez with the two-page copy of the work order. Mr. Martinez became distraught. When asked if an employee should be fired for falsifying a work order, Mr. Martinez agreed that was an appropriate response but denied having falsified a work order. Mr. Martinez asked to see the original work order and was told he could not.

Mr. Gately determined after this meeting that he would terminate Mr. Martinez. While Mr. Puterbaugh and Mr. Fischer discussed the matter with Mr. Gately and Mr. Fischer provided information regarding the gate access records and the April 27 work order, Mr. Gately was the sole decision-maker. Mr. Gately then discussed his termination decision with Al Mundt, plant manager, Jane Jontz, human resources manager, and Martin Van Triese, quality assurance manager. On May 1, 1995, Mr. Gately and Mr. Puterbaugh met with Mr. Martinez and terminated him.

As Mr. Martinez presents no direct evidence of discrimination to support his Title VII claim, he must proceed under the *McDonnell-Douglas* burden-shifting analysis. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case under that analysis, Mr. Martinez must show that (1) he is a member of a protected class; (2) he was meeting Abbott's legitimate

4

business expectations; (3) he suffered an adverse employment action; and (4) Abbott treated other employees, not in the protected class, more favorably. *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531 (7th Cir. 2003). If Mr. Martinez establishes a prima facie case, Abbott must come forward with a legitimate, non-discriminatory explanation for his termination. *Id.* Once Abbott has done so, Mr. Martinez bears the burden of showing that the given reason is pretextual. *Id.* Abbott argues that, while Mr. Martinez meets the first and third prongs of this analysis, he cannot establish either the second or fourth prongs. Abbott also argues that Mr. Martinez cannot show that Abbott's stated legitimate reason for terminating him was pretexual.

Abbott argues that Mr. Martinez was terminated for falsifying a work order and for taking excessive time away from his job. These arguments, and Mr. Martinez's counter-arguments, address not only whether Mr. Martinez was meeting Abbott's legitimate business expectations (the second prong of the *McDonnell-Douglas* analysis) but also whether Abbott's stated reasons for termination are pretexual. Although plaintiffs must technically establish a prima facie case before the employer's explanation can be examined for pretext, these arguments are so intertwined as to make such a mechanistic separation unworkable. *See Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1404 (7th Cir. 1996). I will therefore consider the issues simultaneously.

5

Mr. Martinez fails to present evidence demonstrating that Abbott's stated reason for his termination is pretextual. Mr. Gately states that he terminated Mr. Martinez for two reasons: falsification of the April 27 work order and excessive time away from work, as documented by the gate access records. Mr. Martinez argues in response that he neither falsified the work order nor took excessive time away from his work; he claims that the documents supporting Mr. Gately's decision must have themselves been somehow falsified. However, Mr. Martinez's arguments miss the mark. To prevail on his Title VII claim, he must show not that Mr. Gately, and therefore Abbott, made a mistake in terminating him, but that Mr. Gately terminated him because of his national origin and not for the stated reason. Even if Mr. Gately was wrong about Mr. Martinez's alleged infractions, if he honestly believed that they occurred and those infractions formed the basis for the termination, no Title VII violation has occurred. *Rummery v. Ill. Bell Tele., Inc.*, 250 F.3d 553, 557 (7th Cir. 2001); *Hartley v. Wisc. Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997).

Mr. Martinez also argues that Abbott's reasons are pretextual, as Mr. Puterbaugh and Mr. Fischer harbored discriminatory motives that can be imputed to Mr. Gately's decision to terminate Mr. Martinez. Mr. Martinez relies on *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446 (7th Cir. 1994), to support his argument. In *Dey*, the plaintiff had alleged sexual harassment on the part of in-house

counsel for the small company she worked for. *Dey*, 28 F.3d at 1449-50. Shortly after her complaints directly to her harasser, the plaintiff's supervisor made the decision to terminate her employment, based on a meeting with the harasser and another member of management. *Id.* at 1451. The plaintiff alleged that her termination was in retaliation for her complaints about the harassment. *Id.* at 1452. The district court granted summary judgment in favor of the defendants, stating that plaintiff had presented no evidence that her employer knew of her complaints before deciding to terminate her. *Id.* at 1458. The Seventh Circuit reversed, holding that the fact that her harasser was present at the meeting in which her termination was decided was sufficient to allow an inference that her employer had been told of the plaintiff's complaints. *Id.* at 1458-59. The court also relied on indications that plaintiff's employer had solicited the harasser's opinion before making his decision. *Id.* at 1459.

Here, Mr. Martinez argues that while Mr. Gately may have borne no animus based on national origin, Mr. Puterbaugh and Mr. Fischer did, and that animus can be imputed to Mr. Gately as they were both involved in the decision to terminate Mr. Martinez. Mr. Martinez presents no evidence that either Mr. Gately or Mr. Fischer bear any animus based on national origin. Therefore, to survive summary judgment, Mr. Martinez must present evidence that Mr. Puterbaugh did bear animus toward Mr. Martinez based on his national origin,

and that Mr. Puterbaugh provided Mr. Gately with information used in making the decision to terminate Mr. Martinez.

Mr. Martinez's evidence of Mr. Puterbaugh's alleged animus based on Mr. Martinez's national origin concerns two other Filipinos who also worked as solutions operators, Crescencio Sala and Fernando Habito. Mr. Martinez contends that Mr. Sala and Mr. Habito were also treated poorly because of their national origin and were forced out of the department. Mr. Habito did transfer out of the department, but stated that his reason for requesting a transfer was that he felt he had "limited opportunity to grow" in the department. Mr. Habito also stated that he also worked as a substitute teacher two or three days a week, and that he applied for a transfer when his position on the second shift was "cut off," in an attempt to remain on second shift with Abbott. Mr. Habito did state that he felt Mr. Puterbaugh treated him differently because he was Filipino, because Mr. Habito felt he was written up for an error where a white employee would not have been.

Mr. Sala also left the department. Mr. Sala requested, and received, a promotion that took him out of the department. Mr. Sala also stated that he felt Mr. Puterbaugh treated him the same as he did other employees. Mr. Martinez's argument about Mr. Puterbaugh's animus and Mr. Sala concerns another employee, Jerome Jankowski. Mr. Sala stated that Mr. Jankowski did not like him because of his national origin, and that Mr. Jankowski had used

8

racial slurs toward him. However, Mr. Sala also stated that he never informed Mr. Puterbaugh of these incidents. Assuming Mr. Jankowski did make those statements, any animus cannot be imputed to Mr. Puterbaugh's lack of action if he was never made aware of the statements.

Even assuming that Mr. Puterbaugh did harbor some discriminatory animus toward Mr. Martinez, his input did not result in Mr. Martinez's termination. The stated reasons for that termination were the falsification of a work order and excessive time away from the job. Mr. Fischer provided Mr. Gately with the documentation (the two-page copy and gate access records) that formed the basis for the decision, not Mr. Puterbaugh. Mr. Martinez presents no evidence that Mr. Puterbaugh had anything to do with those documents or, indeed, that he even knew of their existence or significance until Mr. Fischer brought them to his attention. This case is thus distinguishable from *Dey*, where the stated reason for plaintiff's termination was that her harasser and other employees found her "difficult to work with." *Dey*, 28 F.3d at 1452. This attempt to show pretext on the part of Abbott also fails, and I grant Abbott's motion for summary judgment with respect to Count I.[2]

---

[2] As Mr. Martinez cannot show that Abbott's stated reasons for terminating him were pretextual, I do not reach the issue of whether similarly situated employees not in the protected group were treated more favorably.

II.

Mr. Martinez also alleges that, pursuant to Illinois common law, Abbott either negligently (Count II) or willfully and wantonly (Count III) destroyed relevant records which it was mandated to retain by 29 C.F.R. § 1602.14. Illinois does not recognize a separate cause of action for negligent or intentional spoilation of evidence, but allows for potential recovery under a general negligence theory. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270, 273 (Ill. 1995). Illinois law does not provide for a general duty to preserve evidence, but such a duty may be created by an agreement, a contract, a statute, or other special circumstances. *Id.* at 270-71. Here, Mr. Martinez argues that a duty is created by 29 C.F.R. § 1602.14 which, in relevant part, requires employers to retain

> [a]ny personnel or employment record made or kept by an employer ... Where a charge of discrimination has been filed ... against an employer under Title VII or the ADA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.

29 C.F.R. § 1602.14. While the duty exists, there is no breach of that duty by Abbott. Mr. Martinez contends that Abbott was required to preserve the original work order from April 27, 1995. The original work order is not included within the records contemplated by 29 C.F.R. § 1602.14. Mr. Martinez objects to the retention of only the two-page copy of the April 27 work order, but presents no evidence that the full work order was ever examined in

10

connection with his termination or otherwise became part of his personnel record.

Furthermore, even if Mr. Martinez could demonstrate that the April 27 work order fell under the requirements of 29 C.F.R. § 1602.14 (and thus Abbott breached its duty by destroying it), he still cannot prevail for lack of causation. In order to show the required causation, Mr. Martinez had to demonstrate that he would have had a reasonable probability of prevailing on his Title VII claim if the work order had not been destroyed. *Boyd*, 652 N.E.2d at 271 fn.2. Mr. Martinez cannot make such a showing. To prevail on his Title VII claim, Mr. Martinez must show that Abbott's stated reasons for terminating him were pretextual. *See, e.g., Ajayi*, 336 F.3d at 531. If the April 27 work order had been preserved, Mr. Martinez argues that he could have demonstrated that his alleged wrongdoing with respect to that work order was fabricated. However, Mr. Gately never looked at or considered the original work order when he decided to terminated Mr. Martinez. Preservation of the original work order would not have enabled Mr. Martinez to establish that Mr. Gately did not rely on the two-page copy in his decision to terminate Mr. Martinez. At best, Mr. Martinez could demonstrate that Mr. Gately made a mistake in terminating Mr. Martinez, not that he did so for a discriminatory reason. Abbott's

motion for summary judgment with regard to Counts II and III is granted.[3]

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: February 3, 2005

---

[3] Mr. Martinez also moved to strike the two-page copy, labeled Fischer Ex. 3, as well as any statements relying on that copy, pursuant to Fed. R. Evid. 1004, and for sanctions pursuant to Fed. R. Civ. P. 37. Mr. Martinez's argument that the work order itself is the cornerstone of Abbott's alleged reason for terminating him is flawed, as the decision-maker relied solely on the two-page copy, not the original work order, as discussed above. Here the copy is, itself, the original for purposes of Fed. R. Evid. 1004. That motion is denied.